## Texaco, Inc. *v.* Louis B. Rogow

Baldwin, C. J., King, Murphy, Shea and Alcorn, Js.

Argued February 6—decided March 8, 1963

*Charles B. Milliken,* with whom, on the brief, was *John R. Horan,* for the appellant-appellee (plaintiff).

*Harry L. Nair,* with whom were *William W. Bernstein* and, on the brief, *Jonathan S. Cohen,* for the appellee-appellant (defendant).

KING, J. The plaintiff, Texaco, Inc., sought specific performance of a contract to sell certain premises leased to it by the defendant. It claimed to have exercised, at a price of $16,000, an option to purchase which was contained in the lease. The defendant, in his answer and counterclaim, denied that the plaintiff had any right to exercise any option at $16,000, alleged that the plaintiff had in fact exercised an option to purchase the premises for $44,000, and sought, by way of counterclaim, specific performance of the plaintiff's alleged agreement to purchase the property at the latter figure. Judgment was rendered for the defendant on the complaint and for the plaintiff on the counterclaim, and each party has appealed.

On March 14, 1940, the defendant, through a corporation controlled by him, leased to the Texas Company, a forerunner of the plaintiff, certain premises in East Hartford on which the lessor, in accordance with the provisions of the lease, built a gasoline service station at a cost of about $12,000. The 1940 lease ran for a term of ten years beginning May 1, 1940, and gave the lessee an option to purchase the premises for $16,000. The present parties, on September 27, 1950, entered into a new

lease of the same premises, then owned by the defendant, to run for a term of ten years beginning May 1, 1950. Paragraph nine of the lease contained certain provisions as to the lessee's rights to purchase the property, the meaning and effect of which are the main source of controversy in this action.[1] Although the lease, as set out in the footnote, was on a printed form prepared by the plaintiff, the words, "[i]t being agreed however that said option will not be exercised before the end of the ninth year," which would be a period inclusive of April 30, 1959, were added to the lease, in typewriting.

---

[1] "(9)—OPTION TO PURCHASE. Lessor hereby grants to lessee the exclusive right, at lessee's option, to purchase the demised premises, together with all structures, improvements, and equipment thereon, free and clear of all liens and encumbrances, including leases, (which were not on the premises at the date of this lease) at any time during the term of this lease or any extension or renewal thereof,

"(a) for the sum of Sixteen thousand ($16,000) dollars; it being understood that if any part of said premises be condemned, the amount of damages awarded to or accepted by lessor as a result thereof shall be deducted from such price,

"(b) On the same terms and at the same price as any bona fide offer for said premises received by lessor and which offer lessor desires to accept. Upon receipt of a bona fide offer, and each time any such offer is received, lessor (or his assigns) shall immediately notify lessee, in writing, of the full details of such offer, including the name and address of any offeror, whereupon lessee shall have thirty (30) days after receipt of such notice in which to elect to exercise lessee's prior right to purchase. No sale of or transfer of title to said premises shall be binding on lessee unless and until these requirements are fully complied with.

"Any option herein granted shall be continuing and pre-emptive, binding on the lessor's heirs, devisees, administrators, executors, or assigns, and the failure of lessee to exercise same in any one case shall not affect lessee's right to exercise such option in other cases thereafter arising during the term of this lease or any extension or renewal thereof.

"Upon receipt of lessee's notice of election to exercise any option granted herein, which notice shall be given in accordance with the Notice Clause of this lease, lessor shall immediately deliver to

The parties agreed that this typewritten insertion applied only to the option, hereinafter referred to as the fixed price option, contained in paragraph 9 (a).

In April, 1959, the defendant decided to accept an offer which had been made to him by Albert N. Spaien to purchase the leased premises for $44,000, a price which the court found was not less than the fair market value of the property. Spaien was, and is now, ready, willing and able to buy the property, subject to the lease, and it is not disputed that his offer was bona fide. On April 29, 1959, the defendant mailed a notice to the plaintiff, setting forth the terms of the Spaien offer and stating that he desired to accept it, all pursuant to paragraph 9 (b) of the lease, which contained a provision according a right of first refusal, sometimes, for convenience, referred to as a first refusal option.[2] This

lessee, at lessor's expense, a complete Abstract of Title or other evidence of title satisfactory to lessee, and shall also furnish, at lessor's expense, an up-to-date survey by a licensed or registered professional engineer or surveyor showing elevation of property and corners marked with concrete monuments, upon receipt of which the lessee shall have a reasonable time in which to examine title and upon completion of such examination if title is found satisfactory, shall tender the purchase price to lessor, and lessor shall thereupon deliver to lessee a good and sufficient Warranty Deed conveying the premises to the lessee free and clear of all encumbrances (including without limiting the foregoing the rights of dower and/or curtesy). All rentals and taxes shall be prorated between grantor and grantee to the date of delivery of the aforesaid deed.

"Lessee's notice of election to purchase pursuant to either of the options granted in this clause shall be sufficient if deposited in the mail addressed to lessor at or before midnight of the day on which option period expires."

[2] It is pointed out in *New Haven Trap Rock Co.* v. *Tata*, 149 Conn. 181, 186, 177 A.2d 798, and in 1 Corbin, Contracts (1950) § 261, pp. 859, 862-864, that such a provision does not, strictly speaking, constitute an option but creates in the lessee a right of first refusal, that is, an enforceable right that the lessor, before

notice was received by the plaintiff the next day, April 30. The plaintiff claims that in a letter written by it to the defendant on May 4, 1959, it exercised the fixed price option. After a formal demand on the defendant for a conveyance, at the price of $16,000, made on May 14, 1959, and a formal tender of $16,000, made on September 3, 1959, both of which were refused by the defendant, the plaintiff, on September 23, 1959, instituted this action.

The court concluded that the plaintiff lost its right to purchase at the fixed price when it failed to exercise its first refusal option within thirty days after receipt of the notice of April 29, 1959. It should be observed that the fixed price option could not have been exercised until May 1, 1959. By then, the Spaien offer had been made and notice of it had been given to the plaintiff. The decisive inquiry is whether the plaintiff, after receipt of notice of the Spaien offer, could exercise its fixed price option.

The plaintiff claims that, at any time after the first nine years, it could exercise its fixed price option without regard to what, if any, proceedings had been taken by the lessor under the first refusal provision. A collection of cases involving the interpretation and construction of contracts containing provisions embodying a fixed price option and a right of first refusal may be found in 8 A.L.R.2d

selling to a third party, should give the lessee an option to buy at the price offered by the third party. For convenience of expression, in *Texas Co.* v. *Crown Petroleum Corporation,* 137 Conn. 217, 221, 75 A.2d 499, we referred to such a provision as a first refusal option. Actually, after notice had been given pursuant to paragraph 9 (b), this plaintiff, for the first time, was accorded what may be termed, in a true sense, a first refusal option. See *Grant* v. *Pagter,* 133 Conn. 646, 647, 53 A.2d 380, referred to in 1 Corbin, op. cit., p. 859.

604. See also *Texas Co.* v. *Crown Petroleum Corporation,* 137 Conn. 217, 224, 75 A.2d 499 (which involved the predecessor of the plaintiff and was concerned with a similar lease). Since such contracts, although often generally similar, are worded differently and executed under varying circumstances, a decision interpreting and construing one contract is far from controlling in a case involving another.

The plaintiff, in support of its claims, relies on the clause of the lease which provides that "[a]ny option herein granted shall be continuing and preemptive, binding on the lessor's heirs, devisees, administrators, executors, or assigns, and the failure of lessee to exercise same in any one case shall not affect lessee's right to exercise such option in other cases thereafter arising during the term of this lease." In connection with the clause quoted above, the plaintiff makes the following argument: (1) Only a third party purchaser can become an "assign." (2) One could not be a third party purchaser, under the terms of the lease, unless a first refusal option had been given the plaintiff and had been rejected by it. (3) If the first refusal option was rejected and a sale was consummated, the only option which would be left outstanding to affect the rights of the third party purchaser would be the fixed price option. (4) As a consequence, the phrase "any option" must refer to the fixed price option, and only to that option. On that basis, the plaintiff claims that the fixed price option can be exercised at any time against a third party purchaser of the property, regardless of any prior notice being given the lessee pursuant to the first refusal clause. In support of this construction, the plaintiff cites *Sinclair Refining Co.* v. *Clay,* 102 F. Sup. 732 (E.D. Ohio), aff'd, 194 F.2d 532 (6th Cir.); *Adams*

v. *Willis,* 225 S.C. 518, 83 S.E.2d 171; and *Butler* v. *Richardson,* 74 R.I. 344, 349, 60 A.2d 718.

This argument is ingenious rather than persuasive. A more reasonable interpretation is that the word "assigns" was inserted, immediately after the words "heirs, devisees, administrators [and] executors," not as a recondite method of according complete priority to the fixed price option but rather as a means of making sure that the option obligations of the lessor, whatever they might be, would persist throughout the life of the lease and would be binding on any successors in interest of the lessor. Obviously, the word "assigns" could embrace persons who are not purchasers, for example, donees. The plaintiff's construction would result in the following: (1) After the close of the ninth year, the maximum price for which the defendant could sell the property to any third party would in all practicality have to be less than $16,000. (2) Even before the close of the ninth year, although the fixed price option, under the express terms of the lease, could not be exercised by the plaintiff, it would necessarily control the price at which the property could be sold to a third party during that period because of the obligation of any purchaser, upon demand, to convey it to the plaintiff, after the nine-year period, at the price of $16,000. Indeed, it is this factual situation which in effect is now before us.

The plaintiff's interpretation of the provisions in question would, solely by implication, wholly subordinate the first refusal provision to the fixed price option. This interpretation is reached in the absence of any language in the lease expressive of any such intention and would render virtually inoperative the provision expressly according the defend-

ant the unrestricted opportunity to attempt to obtain the fair value of the property during the first nine years. There is no language whatever in the lease indicative of any intention other than that the first refusal provision was the only one under which the plaintiff could purchase the property during the first nine years and that, after that period, the first refusal provision was one of two option provisions, each of which was on a parity with the other. Under the circumstances, it would be unreasonable to hold that, if a lessee is given notice of an offer and refuses to exercise a first refusal option under paragraph 9 (b), it can thereafter, at any time after the first nine years, purchase the property at $16,000 despite a prior sale of it to the offeror named in the notice.

A term not expressly included will not be read into a contract unless it arises by necessary implication from the provisions of the instrument. *Ives* v. *Willimantic,* 121 Conn. 408, 411, 185 A. 427; *Connecticut Co.* v. *Division 425,* 147 Conn. 608, 621, 164 A.2d 413. Also, if the terms of an instrument are fairly susceptible of two or more interpretations, the one which is the more equitable, reasonable and rational is to be preferred. *Peoples* v. *New England Lumber & Box Co.,* 107 Conn. 724, 726, 142 A. 387; *Hamden Holding Corporation* v. *United Men's Shops, Inc.,* 127 Conn. 500, 502, 18 A.2d 356. Furthermore, words in an agreement must be accorded their common meaning and usage where they can be sensibly applied to the subject matter of the contract. The agreement as a whole must be considered, and each part given effect if possible. *Sturtevant* v. *Sturtevant,* 146 Conn. 644, 647, 153 A.2d 828. These rules cannot be rendered ineffective in this case by the general rule that, where

there is an ambiguity, the lessee is favored—a rule recognized in cases such as *Connecticut Land & Mortgage Co.* v. *Lesser,* 136 Conn. 580, 583, 72 A.2d 805, and *Ingalls* v. *Roger Smith Hotels Corporation,* 143 Conn. 1, 6, 118 A.2d 463. This general rule does not mean that any solution of a claimed ambiguity, if proposed by a lessee, should prevail.

Applying, as we must, the foregoing rules of interpretation, it becomes clear that the plaintiff's claims are in violation of them and must fail. It is also clear that the correct application of these rules supports the result reached in the court below. The plaintiff's fixed price option could be effectively exercised only after the first nine years of the term, and then, practically speaking, only prior to the plaintiff's receipt of a notice from the defendant of a valid and bona fide offer from a third party. On April 30, 1959, still during the first nine years of the lease, the plaintiff did receive notice from the defendant of the Spaien offer and of the defendant's desire to accept it. Thereupon, the fixed price option was rendered ineffective and could not be exercised even after the close of the ninth year, and the plaintiff had to accept the first refusal offer, as provided in the lease, or risk losing the right to purchase the property thereafter.[3] *Shell Oil Co.* v. *Blumberg,* 154 F.2d 251, 252 (5th Cir.); *Adams* v. *Helburn,* 198

---

[3] It is possible that a situation might arise where, without fault on the part of either party to the lease, a first refusal offer was made by a person not actually ready, willing and able to carry out the offer, whether at the time he made the offer or at the time for the performance. What effect such a situation might have on reviving the fixed price option is a matter not before us. There is language in paragraph 9 (b) indicating that the parties envisioned the possibility of more than one offer being made to the defendant which he would desire to accept and notice of which he would be required to give to the plaintiff.

Ky. 546, 548, 249 S.W. 543; 1 Corbin, Contracts
(1950) § 261, p. 864. It makes no claim that it at-
tempted to exercise the first refusal option.

Since the plaintiff did not, and, as it concedes,
could not, exercise its fixed price option during the
first nine years of the lease, and since notice giving
it the first refusal option was given during that
period and, indeed, prior to the plaintiff's attempted
exercise of the fixed price option, judgment was
properly rendered for the defendant on the com-
plaint.

The appeal of the defendant from the judgment
for the plaintiff on the counterclaim depends on
his claim that the plaintiff's notice of acceptance of
the option, dated May 4, 1959, operated as an ex-
ercise of the first refusal option at $44,000. On May
4, 1959, the plaintiff, through its attorney, mailed
a written notice to the defendant, which he received
the next day and which stated: "Texaco, Inc., . . .
hereby exercises the option to purchase . . . [the
leased premises]." Nothing was said in that letter
about the Spaien offer or which option the plain-
tiff was purporting to exercise or whether the price
would be $16,000, as provided in the fixed price
option, or $44,000, as would have been the case
under the first refusal option. On April 23, 1959,
and again on May 4, 1959, however, the plaintiff's
attorney had orally told the defendant's attorney
that the plaintiff intended to exercise its option
to purchase the property for $16,000.

The court found that the only option which the
plaintiff intended to exercise was the fixed price
option, and this finding is well supported by the
conversations between the attorneys for the parties,
which made it clear that the defendant knew exactly
what option the plaintiff claimed to have exercised.

Specific performance is not a matter of right, as are damages in a proper case, but lies in the legal discretion of the court. Under the circumstances, it was at least within the court's discretion to refuse the defendant's request for specific performance, since it was based on what at most was a technical exercise of the first refusal option and since, to the knowledge of the defendant, the exercise was wholly unintended by the plaintiff. *Sidor v. Kravec,* 135 Conn. 571, 573, 66 A.2d 812. The court was not in error in refusing specific performance against the plaintiff and in rendering judgment in its favor on the counterclaim.

There is no error.

In this opinion the other judges concurred.