KENNETH J. KELLY ET AL. *v.* THOMAS J. KARAM

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 3-6710-7328

Argued March 9—decided May 15, 1970

*James C. Deakin,* of Danbury, for the appellant (defendant).

*Richard H. Lynch,* of Milford, for the appellees (plaintiffs).

CASALE, J. This action is based on an option contained in a warranty deed under which the grantor, Ruth R. Ross, reserved the right to repurchase from the grantee, the defendant in this case, one of several lots conveyed thereby.

When the case was reached for trial, the plaintiffs and the defendant offered no oral testimony but submitted the cause to the trial court for decision on such allegations of the complaint as were admitted by the defendant together with three documents which were admitted into evidence and marked as exhibits by stipulation of counsel read into the record. The stipulation stated that the three documents were submitted "for the consideration of the court in the construction of an agreement for the repurchase of said Lot No. 4 as set forth in the . . . deed."

The three documents received in evidence are: (1) An unsigned agreement between Ruth R. Ross and Thomas R. & Sidney J. Karam, Inc. This agreement was not fully dated, but it was stipulated by the parties that this agreement was of a date prior to the date of the execution of the warranty deed next described. (2) A warranty deed from Ruth R. Ross to Thomas J. Karam, dated June 12, 1966, and recorded in the Newtown land records, volume 195, page 519. (3) An assignment of the option to repurchase contained in that deed from the estate of Ruth R. Ross to the plaintiffs, Kenneth J. and Frances D. Kelly, owners of property adjoining lot No. 4. This assignment was dated January 17, 1967, and is recorded in the land records of the town of Newtown, volume 199, page 174.

The unsigned agreement provides for the sale of sixteen lots, including lot No. 4, shown on a map entitled "Taunton Crest Property . . ." on file in the Newtown town clerk's office. The agreement provides that lot No. 4 will be held by the buyer "subject to a right of first refusal given to the Seller and that before conveying this lot to a third party the Buyer will give the Seller an option to purchase said lot at a price of $3,500.00, or at the price which the Buyer

would sell the lot to a third party." The full text of this right of the first refusal appears in the footnote.[1]

The warranty deed from Ruth R. Ross to Thomas J. Karam conveys only eight lots in the Taunton Crest tract, including lot No. 4. This deed provides that "the Seller shall have an option to repurchase said Lot No. 4 at a price of $3,500, or at a price which the Grantee herein shall have received from a third party by way of a bona fide offer to purchase said premises." The full text of this option appears in the footnote.[2]

In his answer to the plaintiffs' complaint, the defendant admits that on April 14, 1967, the plaintiffs notified him that they were exercising their option to purchase lot No. 4 for the stipulated price, and that they requested the defendant to set a closing

---

[1] "The Buyer agrees that Lot #4 on the aforesaid map will be held by them subject to a right of first refusal given to the Seller and that before conveying this lot to a third party the Buyer will give the Seller an option to purchase said lot at a price of $3,500.00, or at the price which the Buyer would sell the lot to a third party. The Seller shall have sixty (60) days in which to exercise said option rights. A clause creating this right in the Seller will be contained in the deed of conveyance, but the right or rights granted the Seller shall only exist until the Buyer has a bona fide offer of sale which they wish to accept, or for a period of four (4) years from the date of closing, whichever is sooner. When either of said expiration times occur the Seller shall have the aforesaid sixty (60) day period to exercise her rights." (Unsigned agreement.)

[2] "By the acceptance hereof the Grantee, his heirs, executors, administrators and assigns, agrees that the Seller shall have an option to repurchase said Lot No. 4 at a price of $3,500, or at a price which the Grantee herein shall have received from a third party by way of a bona fide offer to purchase said premises. The Grantor herein shall have sixty days after receiving notification of said offer to exercise said option. These option rights shall be valid only for a period of four years from the date hereof, or until such time as said bona fide offer to purchase is received by the Grantee herein provided, however, that upon either of said expiration dates the Grantor herein shall have the aforesaid sixty day period in which to exercise said option rights." (Warranty deed.)

date for the conveyance. In his answer he also admits that he refused and still refuses to convey lot No. 4 to the plaintiffs. There is no indication in the record that the defendant had earlier notified the plaintiffs that he had received a valid and bona fide offer from a third party, for if there had been, the plaintiffs' exercise of its fixed price option may have been ineffective. *Texaco, Inc.* v. *Rogow,* 150 Conn. 401, 409.

The first assignment of error attacks four paragraphs of the finding. One of those paragraphs sets forth at length the option to repurchase contained in the warranty deed, and another states that that option was assigned to the plaintiffs. Two other paragraphs merely set forth two paragraphs of the plaintiffs' complaint which the defendant had admitted in his answer. This assignment is treated as abandoned, since it was not briefed. *Katz* v. *Brandon,* 156 Conn. 521, 524.

The remaining assignments raise two questions, the first being whether the trial court erred in rejecting the contents of the unsigned "agreement," and the second being whether the court abused its discretion in decreeing specific performance when the option to repurchase is not reasonable, certain and free from surprise and mistake, and is too indefinite to be enforced. We will consider the questions in the order stated.

As has been already noted, the unsigned agreement dealt with the proposed sale of sixteen lots, including lot No. 4, with the seller having nothing more than the right of first refusal with respect to the repurchase of lot No. 4. The warranty deed, however, conveyed only eight lots, including lot No. 4, with the fixed option to repurchase lot No. 4 for $3500 or at the bona fide price offered by a third

party. It is noted that the purchaser in the unsigned paper and the purchaser in the deed are not the same. It does not appear at whose request the paper was drawn, nor whether it ever had met with the approval of the owner or the defendant. Apparently there were more discussions before the execution of the deed, for a change was made in the number of lots to be sold and the option was changed from one of first refusal to a fixed-price option to repurchase coupled with a first refusal option.

"As a rule, all prior negotiations become embodied in the writing when both parties enter into and sign a written contract." 17 Am. Jur. 2d 663, Contracts, § 260. It is a question whether the parties intended the signed writing to be the repository of their final agreement, and the intent is to be determined from the conduct and language of the parties and the surrounding circumstances. *Shelton Yacht & Cabana Club, Inc.* v. *Suto,* 150 Conn. 251, 254; *Harris* v. *Clinton,* 142 Conn. 204, 211; *Brosty* v. *Thompson,* 79 Conn. 133, 136. The stipulation of the parties admitting the three documents in evidence did not explain for what purpose the unsigned agreement was offered, nor did it explain the circumstances surrounding the preparation thereof nor the later execution of the deed containing an option quite different from the one in the unsigned paper. In the absence of evidence of conduct and language of the parties and surrounding circumstances showing a contrary intent, the trial court was fully warranted in concluding it was the intention of the parties that the deed was to be the final repository of the preceding conversations and agreements, including the unsigned paper. The court did not err in refusing to accord any evidential value to that paper.

We will now consider the second question.

Applications for specific performance of contracts to sell real estate " 'are addressed to the discretion of the court and will not be granted unless the contract is made according to the requirements of the law, and is fair, equitable, reasonable, certain, mutual, on good consideration consistent with policy, and free from fraud, surprise or mistake.' " *Sidor* v. *Kravec,* 135 Conn. 571, 573, quoting from *Patterson* v. *Bloomer,* 35 Conn. 57, 63.

In briefing the second question, the defendant merely states in general terms that the repurchase option is unreasonable, uncertain and not free from surprise and mistake and is too indefinite to be enforced. He does not deal in specifics.

The description of the land covered by the option cannot be said to be uncertain or indefinite, for it can be made certain by reference to a named map on file in the town clerk's office. *Foster* v. *Civale,* 134 Conn. 469, 472. If it is the defendant's claim that the inclusion of two options in a purchase clause makes the whole clause or contract uncertain or indefinite, it should be noted that there are reported cases where instruments contained two purchase options which were far more involved than the option clause in the instant case. See, e.g., *Texaco, Inc.* v. *Rogow,* 150 Conn. 401; *Texas Co.* v. *Crown Petroleum Corporation,* 137 Conn. 217; note, "Option to purchase at specified price and to purchase at price offered by third person, included in same instrument," 8 A.L.R.2d 604. The option contract in the instant case is clear and unambiguous. The defendant takes nothing under this assignment.

In his brief the defendant makes the claim for the first time that the option was not assignable by the owner to the plaintiffs. We may pass upon only those claims of law made during the trial and specifically set forth in the assignment of errors.

*Draus* v. *International Silver Co.*, 105 Conn. 415, 418; *Fidelity & Casualty Co.* v. *Palmer*, 91 Conn. 410, 418.

There is no error.

In this opinion KOSICKI and JACOBS, Js., concurred.