**McDONALD'S CORPORATION,**
**Plaintiff, Appellee,**

v.

**LEBOW REALTY TRUST, et al.,**
**Defendants, Appellants.**

**No. 89–1499.**

United States Court of Appeals,
First Circuit.

Heard Sept. 15, 1989.

Decided Nov. 1, 1989.

Nancy E. Watters, with whom Constance M. McGrane, Nutter, McClennen & Fish, Boston, Mass., were on brief, for defendants, appellants.

Peter B. Ellis, with whom Teresa A. Martland, Foley, Hoag & Eliot, Boston, Mass., were on brief, for plaintiff, appellee.

Before BOWNES, BREYER and FAIRCHILD *, Circuit Judges.

* Senior Judge of the Seventh Circuit, sitting by designation.

BOWNES, Circuit Judge.

In this diversity contract case defendants-appellants Lebow Realty Trust, et al. (Lebow) appeal from a summary judgment in favor of plaintiff-appellee McDonald's Corporation (McDonald's) ordering Lebow to sell to McDonald's the real property occupied by it as lessee for a price of three hundred thousand dollars ($300,000.00).

## I.

At issue is the construction of two separate paragraphs in a lease between Lebow as lessor and McDonald's as lessee. Paragraph 15 of the lease provides:

### LESSEE'S RIGHT OF FIRST REFUSAL

first 10 years of the 15. If at any time during the first 10 years of the term of this Lease, the Lessor shall desire to accept a bona fide offer received by it to lease the premises for a term commencing at or after the expiration of the term of this Lease, the Lessor shall notify the Lessee of such offer in the manner provided in this Lease for the giving of notice, and the Lessee shall have the right to relet the premises upon the terms and conditions of such offer by giving the Lessor written notice of its election so to do within fifteen (15) days after receipt of Lessor's notice. In the event the Lessee fails to notify the Lessor of its election within the fifteen (15) day period, Lessor shall have the right to lease the premises to any person upon the terms and conditions contained in said notice to Lessee. The Lessee shall have the right to purchase the premises at any time during the term of this Lease by giving the Lessor 120 days written notice of such intent. The agreed upon price for the sale of the premises under this provision is *Three hundred thousand dollars ($300,000.00).* ~~The provisions of this paragraph apply during the extension of the term of this lease.~~

Paragraph 24 of the lease states:

### REFUSAL ON SALE

24. If during the term of this lease or any extension hereof the Lessor shall

desire to accept a bona fide offer to sell the demised premises, the Lessor shall notify the Lessee of such desire to sell in the manner provided in this lease for the giving of notice, and the Lessee shall have the right of first refusal in the event of such offer to purchase said premises upon the same terms and conditions of such offer by giving the Lessor written notice of its election so to do within fifteen (15) days after receipt of Lessor's notice. In the event the Lessee fails to notify the Lessor of its election within the fifteen (15) day period, Lessor shall have the right to sell the premises to any person upon the terms and conditions contained in said notice to Lessee.

The lease was entered into on May 30, 1972, to become effective on October 1, 1972, and ran for 20 years, until September 30, 1992, unless terminated sooner pursuant to its terms. The facts leading to the law suit are simple and do not appear to be in dispute. Since, however, this is an appeal from a grant of summary judgment we state the facts as set forth in appellants' brief at pages nine and ten so there can be no doubt that we are viewing the facts in the light most favorable to the party opposing the motion for summary judgment. *Hahn v. Sargent*, 523 F.2d 461 (1st Cir.1975), *cert. denied* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

On or about November 5, 1985, Lebow received a bona fide offer to sell the Summer Street Property for $450,000 from Michael Bloomberg. By letter of November 12, 1985, Lebow notified McDonald's of its desire to accept the offer and inquired whether McDonald's would exercise its right of first refusal pursuant to Paragraph 24 of the Lease. In response to this letter, McDonald's notified Lebow that it would not exercise its right of first refusal pursuant to paragraph 24, but instead stated, for the first time, that it intended to exercise its purported "option to purchase" for $300,000 contained in Paragraph 15. A copy of this letter was sent by McDonald's to Michael Bloomberg. Prior to the November 12, 1985 letter McDonald's had not attempted nor decided to exercise its pur-

ported "option to purchase." Lebow replied to this letter on December 10, 1985 stating, in essence, that it considered McDonald's attempt to exercise the purported "option to purchase" to be improper and requesting that McDonald's not contact Lebow's potential purchaser, Michael Bloomberg.

(references to appendix omitted).

On December 23, 1985 McDonald's filed a complaint in Federal Court asking for a permanent injunction ordering specific performance by Lebow under paragraph 15 (the fixed price option) of the lease. On August 28, 1987 McDonald's filed a motion for summary judgment. This was followed by Lebow's cross motion for partial summary judgment and an opposition to McDonald's motion for summary judgment. After briefing and hearing, the district court, on April 11, 1989, rendered summary judgment for McDonald's. *McDonald's Corp v. Lebow Realty Trust*, 710 F.Supp. 385 (D.Mass.1989). We affirm.

## II.

There is no question that Massachusetts contract law controls. Whether as a leader or follower, probably a combination of both, Massachusetts contract law reflects the established principles that apply in most jurisdictions.

In Massachusetts, it is well settled that construction of an unambiguous contract is a question of law. *See e.g., Sparks v. Microwave Assoc. Inc.*, 359 Mass. 597, 270 N.E.2d 909, 911 (1971); *Thomas v. Christensen*, 12 Mass.App.Ct. 169, 422 N.E.2d 472, 476 (1981); *Edwin R. Sage Co. v. Foley*, 12 Mass.App.Ct. 20, 421 N.E.2d 460, 464–65 (1981). So long as the words of an agreement are plain and free from ambiguity, they must be construed in their ordinary and usual sense. In the search for plain meaning, a court should consider "every phrase and clause ... [in light of] all the other phraseology contained in the instrument, which must be considered as a workable and harmonious means for carrying out and effectuating the intent of the parties." *J.A. Sullivan Corp. v. Commonwealth*, 397

Mass. 789, 494 N.E.2d 374, 378 (1986). In short, " '[t]he interpretation of an integrated agreement is directed to the meaning of the terms of the writing or writings in the light of the circumstances' of the transaction." *Thomas*, 422 N.E.2d at 476 (quoting *Restatement (Second) of Contracts* § 212(1) and Comment b (1981)).

*Boston Edison Co. v. F.E.R.C.*, 856 F.2d 361, 365 (1st Cir.1988). And, under Massachusetts law where there is no ambiguity in the contract it must be enforced according to its terms. *Freelander v. G. & K. Realty Corporation*, 357 Mass. 512, 258 N.E.2d 786, 788 (1970).

We find nothing ambiguous in either of the two option provisions. Nor, despite Lebow's argument to the contrary, is there anything in the other provisions of the lease that makes the options ambiguous. McDonald's was given a fixed price option and a right of first refusal. Although it may not be standard procedure to include both types of options in a real estate lease, it is not uncommon. *See generally*, Annot. *Construction and Effect of Options to Purchase at Specified Price and at Price Offered by Third Person, Included in Same Instrument.* 22 A.L.R.4th 1293 (1983). And the use of dual options is not unknown in Massachusetts.

In *American Oil Company v. Cherubini*, 351 Mass. 581, 222 N.E.2d 892 (1967) the lessee had a fixed price option of $20,-000. for the term of the lease and any renewal of it under paragraph 6(a) of the lease. Paragraph 6(b) gave the lessee a right of first refusal for the term of the lease and any renewal of it. The lessee notified the lessor of its intention to exercise its fixed price option. Up until the time she received the notification, the lessor had not notified the lessee of any offer to purchase by a third party. After the lessor received notification of the lessee's intent to exercise the fixed price option, she informed the lessee that she had received a bona fide offer to purchase in the amount of $47,500. The court held that since the fixed price option was exercised effectively, "it ripened into a bilateral contract" under which the lessor was obliged to convey the premises to the lessee upon payment of the option price. *Id.* 222 N.E.2d at 894–95. We recognize that the facts in the case at bar are different and agree with the district court that there are no Massachusetts cases directly on point. There are, however some guidelines.

Under Massachusetts law: "An option, being unilateral in its nature, and likely to be exercised when advantageous to the holder of the option and perhaps disadvantageous to the person subject to it, must be exercised, if it is exercised at all by turning corners squarely." *The Tristam's Group, Inc. v. Morrow*, 22 Mass. App.Ct. 980, 496 N.E.2d 176 (1986). *See also Roberts–Neustadter Furs, Inc. v. Simon*, 17 Mass.App. 262, 457 N.E.2d 668, 670–71 (1983) *rev. denied* 391 Mass. 1102, 459 N.E.2d 826 (1984) (option must be exercised strictly in accord with its terms); *Loitherstein v. I.B.M. Corp.*, 11 Mass.App. 91, 413 N.E.2d 1146, 1149 (1980) (one who stumbles in exercising option not entitled to equitable relief); *Westinghouse Broadcasting v. New England Patriots Football Club, Inc.*, 10 Mass.App. 70, 406 N.E.2d 399, 401 (1980) (option conditions must be rigorously complied with).

We agree with the district court that McDonald's turned all the corners squarely here. Within thirteen days of being notified of the offer to purchase the premises for $450,000 it notified Lebow of its intent to exercise its option to purchase the premises for $300,000. It effectively exercised the fixed price option under the terms of the lease.

Because of the lack of Massachusetts precedent covering the instant facts, we consider the law in other states. *Virzi Subaru v. Subaru of New England*, 742 F.2d 677, 680 (1st Cir.1984). We start our analysis by noting that there are two lines of cases. One line holds that when the holder of dual options receives notice from the lessor of an offer to purchase by a third party the fixed price option is extinguished. A case illustrative of this point of view is *Texaco, Inc. v. Rogow*, 150 Conn. 401, 190 A.2d 48 (1963). The court held

that after the lessee received notice of the third party offer, "the fixed price option was rendered ineffective ... and the plaintiff had to accept the first refusal offer, as provided in the lease, or risk losing the right to purchase the property thereafter." *Id.* 190 A.2d at 52 (footnote omitted). In *Shell Oil Co. v. Blumberg,* 154 F.2d 251 (5th Cir.1946) the court applied Alabama law. It noted that the fixed price option and the first refusal option were in the same section of the lease, with the paragraph containing the fixed price option being immediately followed by the paragraph containing the first refusal option. The lease in *Rogow* was the same in this respect. The court in *Blumberg* held that the first refusal option "limits or modifies" the fixed price option and that because the lessee refused to meet the third party offer the fixed price option lapsed. 154 F.2d at 252–53.

We have three comments. First, in the case before us the fixed price option and the right of first refusal are in two completely separate paragraphs with eight intervening paragraphs between them, and there is no language joining them. The modification theory of *Blumberg,* therefore, does not apply. Second, we do not see any inherent contradiction or ambiguity in giving a lessee both a fixed price option and a right of first refusal. Where the language is clear and unambiguous, as it is here, there seems no good reason under established contract law principles why the lessor and lessee should not be bound by what the lease explicitly says. Finally we note that in most cases with dual options the lessee is a large corporation. It is possible that some of the courts holding that a third party offer nullifies the fixed price option may have been influenced by the disparity in wealth between the lessee and the lessor.

We now turn to the line of cases holding that the fixed price option may be exercised by a lessee after it has been notified by the lessor of a bona fide third party offer to purchase. In *Gulf Oil Corp. v. Chiodo,* 804 F.2d 284 (4th Cir.1986) the Fourth Circuit faced an almost identical factual and procedural situation as do we, except that

the district court had held by summary judgment that the third party offer extinguished the fixed price option. The applicable law was that of West Virginia, and as here, there was no state case on point. In reversing the judgment of the district court and finding for the lessee, the court stated:

In the early days of a long term commercial lease, there is a real possibility that the lessor may wish to sell the property for a price substantially less than the fixed price option. At that time, the flow of rental income, as stipulated in the lease, may be a substantial limitation upon what would otherwise be the market value of the improved real estate unencumbered by a long term lease. There is no reason that the parties to a lease should not be allowed to deal with that situation by giving the lessee a right of first refusal if the lessor wishes to sell for an amount less than the fixed price option. There is no inconsistency between the two options, and the fixed price option remains exercisable notwithstanding that the circumstances contemplated by the first refusal option may arise.

*Id.* at 286. We are impressed by this reasoning and we think the courts of Massachusetts would be also. We must note that there was a dissent adhering to the view of the district court.

The Supreme Court of Pennsylvania has also faced the same question as is before us:

The question is whether the lessee who has not exercised his fixed price option prior to notice of a third party offer, may purchase the property for the fixed price, after he has been notified of a third party offer for an amount greater than the fixed price, or whether he must purchase—if he is to purchase at all—by matching the offer of the third party.

*Amoco Oil Co. v. Snyder,* 505 Pa. 214, 478 A.2d 795, 796 (1984). The dual options were contained in paragraph 3(a) and (b) of the lease. The court held that the fixed price option (3(a)) was "plainly written and must be enforced in accord with that plain meaning." The court also pointed out that the right of first refusal (3(b)) did not "in any manner" contradict the fixed price op-

**916**

tion. *Id.* 478 A.2d at 798. The court concluded:

> It may be that it was unwise for Snyders to have entered into this agreement, but it is not our function to rewrite agreements for the parties and to strike a better bargain than they themselves were able to accomplish. Courts are not super-negotiators. Where the language of the instrument is clear, as it is in this case, we are constrained to give effect to what the parties have agreed to.

*Id.* at 799. We agree. Two justices dissented.

A case closer to home is *Shell Oil Company v. Jolley*, 130 Vt. 482, 296 A.2d 236 (1972), in which the Vermont Supreme Court held that Shell could have exercised its fixed price option at the time that it received notice of the proposed sale of the property, expressly rejecting *Shell Oil Co. v. Blumberg, supra.* The court also found that Shell's failure to exercise either option at the time it knew of the third party offer was fatal. *Id.* 296 A.2d at 241–42. Here, there is no question that McDonald's exercised its fixed price option promptly and in accord with its terms.

We have considered all of Lebow's arguments carefully. While the issue is not without doubt, we hold that Massachusetts would give effect to the clear language of the fixed price option which, upon its exercise, became a bilateral contract under Massachusetts law, *American Oil Company v. Cherubini*, 222 N.E.2d at 895, obliging Lebow to sell McDonald's the leased premises. We are reinforced in our holding by the thoughtful opinion of the district judge, and the fact that he was a justice of the Massachusetts Superior Court before being appointed to the federal bench.

Finally, we reject Lebow's contention that this was not a proper case for summary judgment disposition. This is a classic example of a case that should be handled under Fed.R.Civ.P. 56.

AFFIRMED.