## EASTERN BUS LINES, INC. *v.* BOARD OF EDUCATION OF THE CITY OF NORWICH ET AL.
### (3377)

BORDEN, DALY and BIELUCH, Js.

Argued March 19—decision released June 3, 1986

*Thomas M. Bounty,* for the appellants (defendants).

*Mary E. Holzworth,* with whom, on the brief, was *Jackson T. King, Jr.,* for the appellee (plaintiff).

DALY, J. This case involves an action brought by the plaintiff, Eastern Bus Lines, Inc., against the defendants, the city of Norwich and its board of education, claiming damages resulting from the breach of a contract for the transportation of school children during the academic year of 1981-82.[1] The defendants have

---

[1] The contract involved a three year period commencing in September, 1981. In this case we are concerned only with the first year of the contract.

appealed from a judgment of the trial court awarding damages to the plaintiff.[2]

The facts are not in dispute. The defendant solicited bids by advertising its invitation to bid for the school transportation contract for the three year period commencing in the fall of 1981. The invitation to bid set forth contract specifications and estimated transportation requirements for the 1981-82 school year. In pre-bid conferences, it was indicated by the defendant that these were estimates of its transportation requirements. The plaintiff submitted a bid which contained its own specifications and which was ultimately accepted by the defendant. The parties entered into a contract in April, 1981.

The contract provided, inter alia: "Base bid for a total of 2,000 miles for thirty-two (32) plus three (3) spare, sixty-six (66) passenger rated capacity buses. . . . The [defendant] reserves the right to fix the schedules and routes and to reduce or increase existing routes or to change the schedules and number of routes. . . . The [defendant] will purchase a maximum of 90,000 gallons of gasoline or 2,650 gallons per vehicle, whichever is less and will have it delivered to the tank provided by the contractor. The cost of any gasoline in excess of 90,000 gallons or 2,650 gallons per vehicle will be the responsibility of the contractor. . . . [The defendant's charges for mileage adjustments for the first year will be:] $.90 per mile for mileage in excess of 2,000 miles per day plus an added allowance of 1 gallon of gasoline for each 4 miles added. No credit for mileage reductions. . . ."

The defendant made all the monthly payments for charges specified by the contract. The plaintiff subse-

---

[2] We will refer to the named defendant, the Norwich board of education, as the "defendant," as it has been agreed that any judgment rendered in favor of the plaintiff would be entered against the defendant city of Norwich rather than against the board of education.

quently sued for services it provided which were not specifically described in the contract. The defendant has not questioned the amounts claimed for the additional services but maintains that these services were within the terms of the contract and, therefore, that the defendant is not liable for them.

The trial court concluded that any mileage over 2000 miles per day was to be compensated and that additional payment for extra runs or mileage could be allowed even if the 2000 mile limit was not exceeded. The trial court found that the defendant was liable for an amount totalling $19,630.80, based on the following: extra kindergarten runs, the community school shuttle bus, St. Bernard's high school schedule change, and a gasoline allowance for the spare and additional buses.

The defendant has appealed from the judgment claiming that the trial court erred: (1) in ruling that a contract should be construed against the party who drafted it; (2) in concluding that the omission of a provision in the contract specifications was intentional and designed to lull the plaintiff into making a lower bid by leading it to believe that it would be compensated for extra runs; (3) in implying terms in the contract specifications requiring extra compensation to the plaintiff; (4) in construing a contract where only a portion was introduced into evidence; and (5) in considering other contracts made between the defendant and third parties.

On appeal, this court must determine whether the trial court's conclusions, based on the facts and on the law applied to those facts, are correct and fully supported by the evidence and the record. Practice Book § 3060D; *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 222, 435 A.2d 24 (1980). "[R]eview of the trial court's construction of the agreement is an

issue of fact subject to review under the limited standard of whether it is clearly erroneous." *Lavigne* v. *Lavigne,* 3 Conn. App. 423, 427, 488 A.2d 1290 (1985). Our Supreme Court has repeatedly held that "what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact." *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.,* 183 Conn. 266, 274–75, 439 A.2d 314 (1981); *John F. Epina Realty, Inc.* v. *Space Realty, Inc.,* 194 Conn. 71, 78, 480 A.2d 499 (1984); *Gallicchio Bros., Inc.* v. *C & S Oil Co.,* 191 Conn. 104, 107, 463 A.2d 600 (1983). Our review is therefore limited to whether the trial court was clearly erroneous in concluding that the plaintiff was entitled to extra compensation for the bus runs and for gas allotment for the spare buses.

The general rule is that when contract language is ambiguous or susceptible to different interpretations, "the language is to be construed against the [party] who drew it . . . and for whose benefit it was inserted." *Sturman* v. *Socha,* 191 Conn. 1, 9, 463 A.2d 527 (1983). This principle of contract construction is known as the contra proferentem rule, which has no application if the contract term has only one reasonable interpretation and was definitely assented to by both parties. 3 Corbin, Contracts § 559.

In its first claim of error, the defendant maintains that the trial court committed three fundamental errors in applying the contra proferentem rule: (a) by finding that the defendant alone drafted the contract; (b) by failing to find the requisite ambiguity; and (c) by resorting to the rule without first looking to the language of the contract itself to determine the intent of the parties.

The defendant claims that because the plaintiff had participated actively in drafting the contract terms, the

contra proferentem rule is not applicable. *Centennial Enterprises* v. *Mansfield Development Co.,* 568 P.2d 50, 52 (Colo. 1977). The rule was held applicable where "the contract was drawn up in response to the other party's written proposals, after a lengthy negotiation and while the parties sat in his attorney's office awaiting it. . . . [The rule recognizes, however, that] the draftsman's choice of words, the precise phrases and their order are critical elements in the judicial interpretation of contracts." *Ravitch* v. *Stollman Poultry Farms, Inc.,* 165 Conn. 135, 146, 328 A.2d 711 (1973). "The premise operating behind the rule would seem to be a psychological one. The party who actually does the writing of an instrument will presumably be guided by his own interests and goals in the transaction. He may choose shadings of expression, words more specific or more imprecise, according to the dictates of these interests." Id., 146 n.8; see also *Griswold* v. *Union Labor Life Ins. Co.,* 186 Conn. 507, 513, 442 A.2d 920 (1982); 4 Williston, Contracts (3d Ed. Jaeger) § 621, pp. 760–61. The plaintiff's participation in the contract negotiations did not preclude the application of the contra proferentem rule.

In a case involving a building contract, our Supreme Court rejected a claim by the state that since the contract contemplated a complete building which would not be complete without wiring, the general contractor should be held responsible for the wiring whether or not it was included in the contract plans and specifications. The court rejected this contention and applied the contra proferentem rule against the state. *Southern New England Contracting Co.* v. *State,* 165 Conn. 644, 655–56, 345 A.2d 550 (1974). In this case, there was evidence before the trial court here that while the contract contained a provision for the payment of compensation when the mileage exceeded 2000 miles per day, the plaintiff was paid for work which was not

included in the specifications and which was unanticipated at the time the specifications were made despite this provision. In order to understand the terms of a contract, a contract must be construed to reflect the parties' intent which is determined from the language used as applied to the circumstances surrounding the transaction. *Sturman* v. *Socha,* supra, 10. The intention of parties to a written agreement is to be " 'determined from its language and not on the basis of any intention either [party] may have secretly entertained.' . . . In interpreting contract terms . . . the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." Id.; *Lar-Rob Bus Corporation* v. *Fairfield,* 170 Conn. 397, 407, 365 A.2d 1086 (1976). There is an ambiguity in this agreement concerning the payment for extra bus runs and the gas allowance for spare buses.

There is no Connecticut authority to support the defendant's next claim that the contra proferentem rule is to be applied only as a last resort. 1A Corbin, Contracts § 268. The court in its memorandum of decision indicates that it reviewed the contract and testimony of the parties in great detail as well as the background of the contract. The omission of payment for extra runs was noted. Hence, even if Connecticut did follow the last resort application, it would appear that the contra proferentem rule was applied in this case as strengthening the trial court's finding concerning the intent of the parties. We do not find that the trial court erred in applying the contra proferentem rule against the defendant.

The defendant challenges the trial court's conclusion that the defendant intentionally omitted to provide for payment for extra bus runs in order to lull the plain-

tiff into submitting a lower bid. The trial court buttressed its finding by noting that a similar bussing contract between the parties, servicing special education, explicitly bars compensation for extra bus runs, whereas the contract in question is silent as to compensation for extra work. It makes no difference to the legal aspects of the case that such omissions did not have a sinister purpose. *Christie* v. *United States,* 237 U.S. 234, 242, 35 S. Ct. 565, 59 L. Ed. 933 (1915). "Where the parties to a special contract deviate from the original plan agreed upon and the terms of the original contract do not appear to be applicable to the new work, it being beyond what was originally contemplated by the parties, it is undoubtedly to be regarded and treated as work wholly extra, outside the scope of the contract, and may be recovered for as such." 17 Am. Jur. 2d., Contracts § 353. Any error which the trial court may have made in finding that the defendant intended to lull the bidder into making a lower bid would be harmless.

The defendant next claims that the trial court erred in implying a contract term requiring compensation for the performance of the extra work. " 'A term not expressly included will not be read into a contract unless it arises by necessary implication from the provisions of the instrument.' *Texaco, Inc.* v. *Rogow,* 150 Conn. 401, 408, 190 A.2d 48 (1963) . . . . " *Heyman* v. *CBS, Inc.,* 178 Conn. 215, 227, 423 A.2d 887 (1979). The contract provisions allowing the defendant to make changes in bus routes and schedules was silent as to whether compensation would be paid for extra work. The trial court had to imply a term either requiring or disallowing extra compensation. "The intent of the parties to a contract cannot be found by implication unless a contrary intention cannot be supposed or any other inference made. The implication must be a necessary one and quite as obvious from the terms of the con-

tract as though the intent implied was expressed in fact." *Connecticut Co.* v. *Divison 425,* 147 Conn. 608, 621, 164 A.2d 413 (1960). "As intention is an inference of fact, 'the conclusion is not reviewable unless it was one which the trier would not reasonably make.' " *Lar-Rob Bus Corporation* v. *Fairfield,* supra, 403; *Hess* v. *Dumouchel Paper Co.,* 154 Conn. 343, 347, 225 A.2d 797 (1966); *Finlay* v. *Swirsky,* 98 Conn. 666, 671, 120 A. 561 (1923). Here, even though the 2000 mile limit was not exceeded, compensation was warranted.

The defendant's claim that the trial court failed to construe the written agreement in its entirety was not properly preserved at trial for review on appeal. Here, we will enforce the rule that claims not made at the trial court will not be considered on appeal. Practice Book § 285A; *Latimer Point Management Corporation* v. *Anderson,* 1 Conn. App. 310, 315, 471 A.2d 670 (1984). The defendant further failed to except to the plaintiff's questioning of the defendant's superintendent of schools about the special education contract. The interpretation of the additional special education contract depends on the intention of the parties. We find that the question of the parties' intent is not reviewable here because the trial court's finding was based on reasonable inferences and was not clearly erroneous.

There is no error.

In this opinion the other judges concurred.