[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this action, the plaintiff, Di-Cesare-Bentley Engineers, Inc., a corporation engaged in the business of providing engineering, surveying and planning services, seeks to recover from defendant, Spencers Landing Associates, a general partnership, and its partners, the balance due under a contract for engineering services, together with interest and attorney's fees. The complaint alleges a second count based upon quantum meruit. Defendants have denied the essential allegations of the complaint.
The facts underlying the first count are found to be as follows:
In 1986, defendant contacted plaintiff concerning civil engineering work involving a condominium project in the Town of Westbrook. At the time, civil engineering firms, such as plaintiff, were quite busy and plaintiff informed defendants that it could not do the perimeter and topographical survey of the premises. Defendants then hired Tony Hendricks to do the perimeter work and to establish the contour lines by a topographical survey. No question has been raised as to the accuracy of Mr. Hendricks' work.
Subsequently, plaintiff was requested by defendants to prepare civil engineering designs of the grading, drainage, erosion control, utilities, septic system, road geometry and related details for 20 attached condominium units based upon a layout prepared by architect Tom Elliot. Plaintiffs did their work and produced maps and documents dated February 20, 1987 which, when submitted as a site plan, were approved by the appropriate agency of the Town of Westbrook.
The plan included an open area to be used as a part of the septic system for a section of the project. According to plaintiffs design, it would be necessary to add fill to this open area to raise it to the required elevation.
Stevens Excavating, Inc. was hired by defendants to do the CT Page 10854 excavating and grading work in connection with the condominium project. At some time prior to, or during the construction, defendants decided to construct the project in phases, Phase I, being limited to six condominium units with a garage and parking area. Since the open area was not needed for the septic system to service the six units being built as Phase I, Stevens removed earth from that area and used it in connection with that part of the project then being built. This was a deviation from the plan and resulted in grades within the open area being lower than as established by Hendricks and as shown on the plan prepared by plaintiff.
Construction of the reduced project was completed in 1987 and plaintiff was paid in full for its services.
By letter dated June 13, 1986, George Kinsley, an attorney and principal in Spencers Landing, contacted plaintiff concerning engineering work on a modification of Phase II of the project. This revision involved the construction of seven single-family homes. Plaintiff was requested to prepare a report as to topographic condition and other site features which would be disrupted by construction under the original plan and to appear before the Westbrook Zoning Board of Appeals in connection with a variance request. This appears to have been done and the variance was granted.
Construction of the single-family homes did not proceed and on October 7, 1996, Attorney Kinsley and George M. Widlitz, another principal of Spencers Landing Associates, met at plaintiffs office to discuss a revision of Phase II, which involved 14 duplex and triplex residences.
As a result of this discussion, plaintiff prepared a contract for professional services. This contract was executed for plaintiff by project manager Steven Hess and forwarded to Spencer Landing on October 9, 1996.
The contract recited that it was between plaintiff, referred to as ENGINEER, and Spencers Landing Association, Attention: Attorney George Kinsley, 11 Woodland Road, P. 0. Box 1238, Madison, CT 06443, referred to as CLIENT. The project was described as Condominium "Plan Modification — Spencers Landing, Old Clinton Road, Westbrook, CT."
Title to the land involved in the project had been conveyed CT Page 10855 to Judith M. Kinsley, Trustee. The trustee was the wife of Attorney Kinsley. On October 15, 1996, the contract was executed on behalf of the CLIENT with Attorney Kinsley signing as attorney in fact for Judith M. Kinsley, trustee. Gary M. Widlitz signed individually. The executed contract was returned to plaintiff.
In accordance with the scope of services clause of the contract, plaintiff performed services producing a site plan and other documents dated November 2, 1996. This site plan was approved by the appropriate zoning authority.
The plan recited that:
 1. This plan is for permit purposes, special permit, and site plan approval only. It is not a contract document.
Clinton S. Brown, president of plaintiff corporation, testified that if the plans were to be used for contract purposes, additional work would be required at additional expense. Despite the notation on the plan, defendant used the drawings to contract for the services of Stevens Excavating, Inc. to do the grading and excavating work.
The excavating contractor was required to grade the property to the elevation required by the site plan. This site plan required that the open area be used for the septic system as shown on the original plan. Before commencing the grading, Gary Stevens of Stevens Excavation, Inc. used a transit to determine the actual elevations of the ground in the open area on the plan reserved for this septic system. When this was done, Stevens discovered that the elevations as shown on the plan were substantially lower than what he found on the ground. The cause of the lower elevation was the removal of earth from the open area during the construction of Phase I. As Mr. Stevens described it, "What had been a hill was now a hole." Because of the water table in the area, the septic system could not be lowered.
Because the additional cost of fill to bring the open area up to the required grade was so high, the townhouse project had to be abandoned.
As an alternative to the townhouse plan, plaintiff was requested to prepare a plan and do other work for a layout of seven single-family units. This work was done and paid for. CT Page 10856
Plaintiff has billed defendants for work done on the townhouse site plan and documents, together with other work performed under the contract. There is no question but that plaintiff did this work. Defendants, however, have refused to pay for these services since the work was of no value to them.
The townhouse plans became unusable because of the discrepancy in elevation between that shown on the map and what existed on the ground and the cost of remedying this problem. The principal issue with respect to liability then revolves around plaintiffs obligation to have been aware of and to have made certain that the site plan accurately reflected elevations on the ground.
The evidence is clear that plaintiff never established contour lines, or elevations, on the land. This work was performed by Hendricks and was supplied to plaintiff by defendant and incorporated into the original site plan of February 20, 1987.
At issue are certain provisions of the "Scope of Services" paragraph in the contract and whether or not plaintiff was required by the contract to show actual elevations as they existed on the ground.
Defendants invoke the rule of contra proferentem. This is the principal of law that language in a contract is to be construed most strongly against the party whose language it is and for whose benefit it was inserted. When two or more meanings may fairly be given to language in a contract the language is to be construed against the one who drew it. Sturman v. Socha,191 Conn. 1, 9 (1983).
While this principal of law is valid, it has no application if the terms of the contract have only one reasonable interpretation. Eastern Bus Lines v. Board of Education,7 Conn. App. 581, 584 (1986). Contractual terms are to be given their ordinary meaning and when the intention conveyed is clear and unambiguous, there is no room for construction. Gino's Pizza ofEast Hartford v. Kaplan, 193 Conn. 135, 138 (1984).
The two paragraphs within the "Scope of Services" section of the contract which might be involved are:
 (2) Revise grading, drainage and erosion control plan to CT Page 10857 accommodate the new building layout provided by you.
 (6) The existing boundary and topographic survey plan will be used. This plan will be updated to show existing conditions (based on the previously performed record plan) and to reflect current adjoining property owners. No survey field work will be performed.
Defendants claim that there is a conflict between the "Revise grading" language of paragraph (2) and the provisions of paragraph (6). It is argued that this created an ambiguity which must be resolved in their favor and that plaintiff was required by the contract to check the existing grades on the property.
An examination of the "Scope of Services" section of the contract, however, does not support defendants' argument. Paragraph (6) clearly indicates that the existing topographic survey would be used. This refers back to the original site plan which used the elevations established by Hendricks. The phrase "updated to show existing conditions must be considered with the clearly unequivocal `no survey field work will be performed.'"
Although George J. Kinsley's letter of June 13, 1996, requesting plaintiff's work on Spencer's Landing, Phase II, stated, "I would like you to prepare a report which would state your finding as to topographic conditions on the site . . ." might be considered a request to determine existing elevations, it was the contract which established the obligations of the parties.
The intentions of the parties, as expressed in the contract, is clear and unambiguous. Plaintiff had no duty to verify existing elevations on the ground by field survey work.
Defendants also argue that the change in elevation of the open area was so apparent that plaintiffs agents and employees should have observed it and recognized the problem. This, however, has not been established by the evidence. It is apparent, however, that defendants who were involved with the Phase I construction must have known that Hendricks' elevations were no longer valid and made no effort to inform plaintiff.
If plaintiff did perform the field work to establish the actual elevation of the open area, the situation would probably not be greatly changed. The correct elevations would be known but, as Clinton S. Brown testified, the septic system could not CT Page 10858 be lowered, so the final elevations on the site plan would probably be as shown on the plan prepared. Defendants would then be in the same situation they were after Stevens' discovery. They would have to determine if the cost of the additional fill made the project feasible. In this situation, plaintiffs bill would have been higher to cover the additional field work.
It is, therefore, found that plaintiff performed all of the work required under the contract. Plaintiff has billed defendants for the work performed under the contract, but defendants have not paid the bill in full. The evidence indicates that a balance of $12,930.74 is now due and owing for services performed under the contract together with interest as provided in the contract.
Under the terms of the contract, defendants agreed to all attorney's fees incurred in collecting any amounts unpaid under the contract. The only evidence concerning the value of attorney's fees was the contract between plaintiff and the law firm which represented it in this matter. The agreement stated that "33 1/3% of the gross recovery" would be charged.
A trial court may rely on its own general knowledge of the trial itself to supply evidence in support of an award of attorney's fees. Rizzo Pool Co. v. DelGrosso, 240 Conn. 58, 77
(1997). Considering all factors involved, an award of attorney's fees to be paid by defendants under the contract is found to be $3,500.
The second count is based upon a claim of quantum meruit. Quantum meruit is the remedy available to a party when the trier of fact determines that an implied contract for services existed between the parties, and that, therefore, the plaintiff is entitled to the reasonable value of the services rendered. Burnsv. Koellmer, 11 Conn. App. 375, 383 (1987).
All of the evidence here supports a finding of an express contract and the case was tried solely on that theory. The court, therefore, will make no finding as to the second count.
Accordingly, judgment is rendered in favor of the plaintiff against the defendants in the amount of $12,930.74, together with attorney's fees in the amount of $3,500.
Joseph J. Purtill, Judge Trial Referee CT Page 10859