In re HOMESTEADS COMMUNITY
AT NEWTOWN, LLC, Debtor.

No. 04–30417 LMW.

United States Bankruptcy Court,
D. Connecticut.

March 17, 2006.

## MEMORANDUM OF PARTIAL DECISION AND ORDER RE: MOTION FOR ALLOWANCE OF CLAIM AND DISTRIBUTION OF PROCEEDS TO TOWN OF NEWTOWN

LORRAINE MURPHY WEIL, Bankruptcy Judge.

The matters before the court are that certain Motion for Allowance of Claim and Distribution of Proceeds to Town of Newtown (Doc. I.D. No. 217, the "Motion")[1] and the Debtor's Objection to Motion for Allowance of Claim and Distribution of Proceeds to Town of Newtown (Doc. I.D. No. 257, the "Objection"). The court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. §§ 1134 and 157(b), and that certain Order dated September 21, 1984 of the District Court (Daly, C.J.).[2]

### I. BACKGROUND

This case was commenced by the above-referenced debtor's (the "Debtor") filing of a petition under chapter 11 of the Bankruptcy Code on February 2, 2004. (Doc. I.D. No. 2.) The case was converted to a case under chapter 7 of the Bankruptcy Code by order dated October 12, 2004. (Doc. I.D. No. 93.) Michael J. Daly (the "Trustee") is the duly-appointed chapter 7 trustee serving in this case.

By order dated April 14, 2005, the court authorized the Trustee to sell the Debtor's real property (the "Property") free and clear of liens for $8,900,000.00 in cash consideration (the "Sale Proceeds"). (Case Doc. I.D. No. 183.) That sale has closed and the Trustee holds the Sale Proceeds

Vincent M. Marino, Esq., Cohen and Wolf, P.C., Bridgeport, CT, for the Movant Town.

F. Timothy McNamara, Esq., F. Timothy McNamara, P.C., Hartford, CT, for the Debtor Objector.

Irve J. Goldman, Esq., Pullman & Comley, LLC, Bridgeport, CT, for Intervenor Bashert Developer, LLC.

Carol A. Felicetta, Esq., Reid & Riege, P.C., New Haven, CT, for the Chapter 7 Trustee.

---

1. References to the docket of this case are in the following form: "Doc. I.D. No. _____." References to the transcript of the November 10, 2005 hearing (the "Hearing") in this case appear in the following form: "Transcript at _____."

2. That order referred to the "Bankruptcy Judges for this District" *inter alia* "all proceedings ... arising in ... a case under Title 11, U.S.C. ....."

subject to valid liens. New Haven Mortgage Refinance, LLC (the "Mortgagee") filed a motion for allowance and payment of its secured claim from the Sale Proceeds. (Doc. I.D. No. 190.) Similarly, the town of Newtown (the "Town") filed the Motion seeking allowance and payment from the Sale Proceeds of its secured claim with respect to an alleged "sewer lien" (the "Lien") on the Property. (Doc. I.D. No. 217.) All objections to the Mortgagee's motion having been either resolved or withdrawn, the court entered two orders authorizing the Trustee to pay the Mortgagee's secured claim: an order authorizing the Trustee to pay principal and interest (Doc. I.D. No. 224); and a second order authorizing the Trustee to pay the Mortgagee's disbursements and further interest (Doc. I.D. No. 260, the "Disbursement Order.")[3]

As noted above, the Debtor filed the Objection with respect to the Motion. The Trustee does not object to the Motion.[4] By order dated November 10, 2005, the current owner of the Property (the "Intervenor") was permitted to intervene in these proceedings. (Doc. I.D. No. 261.) At the Hearing, Frederick W. Hurley, the Public Works Director for the Town, testified for the Town. The Debtor produced no witnesses but both the Debtor and the Town introduced documentary evidence into the record.[5] Some oral argument was heard at the conclusion of the Hearing and post-trial briefing (including briefing by the Intervenor) has been completed. The matter is ripe for decision.

## II. THE MOTION AND THE OBJECTION

The Motions seeks allowance and payment in the amount of $466,507.05 of the Town's alleged secured claim in respect of the Lien.[6] The Objection makes the following principal arguments:

3. The Debtor did not file written objections with respect to the Mortgagee's Motion. However, at the Hearing the Debtor orally moved for this court to reconsider its oral ruling (rendered earlier that day) that the Disbursement Order should enter on the grounds that the Mortgagee's payment (in part) of the Lien was not a valid disbursement because the Lien allegedly was invalid. (Transcript at 78–79.) That motion was denied on the record because, pursuant to the applicable loan documents, the Mortgagee's good faith payment in respect of the Lien became part of the mortgage debt even if the Lien itself was invalid. (Transcript at 80–81.) No appeal was taken and the Disbursement Order has become final.

4. The court previously ruled that the Debtor (and/or its principal) had standing to object to the Motion. However, at the Hearing the Town requested the court to reconsider that ruling (arguing that there was no reasonable likelihood of a surplus to the Debtor in this case), and the court indicated that it would be willing to do so on an appropriate record. (Transcript at 7–9.) Because the foregoing may have come as a surprise to the Debtor and because the parties were prepared to proceed on the merits, the parties agreed at the Hearing that they would proceed on the merits, reserving the issue of standing to another day (if necessary). (Transcript at 10–11.)

5. The Intervenor did not introduce any evidence into the record. References herein to the referenced documentary evidence appear in the following form (as the case may be): "Town's Exhibit ___." or "Debtor's Exhibit ___."

6. The Town calculates its secured claim as follows (the "Calculation"):

The Town's debt is calculated as follows:

Principal and Interest for years 2001 through 2005    $188,964.00
($37,792.80 × 5 years = $188,964) . . .

1. The Lien is purported to be a sewer benefit lien within the purview of Section 7–249 of the Connecticut General Statutes. However, the Debtor argues, the record demonstrates that the claim of the Town (if any) relates to Section 7–255 "connection fees" and not a Section 7–249 "benefit assessment." Accordingly, the Debtor argues, the Lien is invalid.

2. Certain procedural (statutory) requisites for a valid sewer benefit lien allegedly were not satisfied with respect to the Lien.

3. Pursuant to the Agreement (as that term is defined below), the "connection fee" for any particular Unit (as that term is defined below) will not become due until a certificate of occupancy (a "CO") is issued in respect of such Unit. The Debtor argues that, since no CO's have been issued in respect of the Units (and the Debtor now does not even own the Property), there is no "claim" in respect of the "connection fee" within the purview of Bankruptcy Code § 101(5).

## III. *FACTS* [7]

Prior to September 28, 1999, title to the Property appears to have been vested in an affiliate (the "Affiliate") of the Debtor. (Town's Exhibit C at 2.) [8] Part of the Affiliate's plan of development for the Property was the construction and sale of 38 "independent living units." [9] In order to facilitate that plan, on the application of the Affiliate the Town constructed an extension of its sewer systems to reach the Property. (Town's Exhibit C at 1.) The Town borrowed some or all of the cost thereof. (Debtor's Exhibit 2.) The Debtor acquired title to the Property on or about September 28, 1999. (Town's Exhibit C at 2.) The proposed sewer extension was completed and the Property was connected to it in 2000. (Transcript at 23.) That sewer extension was constructed just for the Property. (Transcript at 24.)

In order further to facilitate the relevant development plan for the Property, on or about March 8, 2001 the Town, the Debtor (and the Affiliate) entered into that certain Sanitary Sewer Connection Fee Agreement (a copy of which is in the record as Town's Exhibit C, the "Agreement"). The Agreement provides in relevant part as follows:

3. The connection fee [the "Fee"] for the aforesaid 38 independent living units shall be $10,347.00 per unit, or a total of $393,186.00, which may be paid by Homesteads II [*i.e.*, the Debtor] to the Town, with interest and in installments

| | |
|---|---|
| Principal for years 2006 through 2017 | $277,543.05 |
| ($393,186 / 17 years = $23,128.588 × 12 years = $277,543.05) | |
| | |
| **TOTAL OUTSTANDING ASSESSMENT** | **$466,507.05** |

(Motion at 2, n. 1.)

7. The facts listed in this part III and elsewhere in this memorandum are found based on the record of the Hearing and of this entire case.

8. Exhibit C appears to be incomplete (*i.e.*, one or more of the "whereas" pages are missing).

Page references herein are to Exhibit C as it appears in the record.

9. Each such unit is hereafter referred to individually as a "Unit," and such units are hereafter referred collectively as the "Units."

as hereinafter set forth, on condition that Homesteads II provides the Town, at all times while such connection fee remains outstanding, with security therefor which, in the sole and absolute opinion of the Town Finance Director and the Town Attorney, is sufficient in amount and/or value and is satisfactory in form and substance. So long as such security is provided, Homesteads II shall be permitted to pay the connection fee, with interest at the rate of 5.35% per annum, in 17 equal consecutive annual installments of principal and interest in the amount of $37,792.80 each, to be billed in July of each year, commencing July, 2001, and payable on or before July 31st in each year, for a total payment of principal and interest in the amount of $608,477.74.[10]

If, however, at any time while connection fee remains outstanding, the Town Finance Director and the Town Attorney, in their sole and absolute judgment, shall deem that the Town is not provided with adequate security, as hereinabove required, then the connection fee of $10,374.00 for each unit shall be payable by Homesteads II to the Town, in full, without interest, upon the issuance of the certificate of occupancy for each such unit.[11]

3. [sic] For all units for which installments are provided, a "Certificate of Notice of Installment Payment of Connection Fee" shall be filed in the Newtown Town Clerk's Office. Said Notice shall be enforceable in accordance with the provisions of Section 7–258 of the Connecticut General Statutes . . . .

(Town's Exhibit C at 3–4.) The general form of the Agreement was the Town's form used for other owners in the area. (Transcript at 35–36.)

Attached to the Agreement was a copy of a "Sewer Benefit Analysis of The Homesteads at Newtown Mount Pleasant Road and Pocono Road, Newtown, CT" addressed to the "Newtown WPCA" from Kerin Commercial Real Estate and dated January 23, 2001. (*See* Town's Exhibit C (attachment, the "Appraisal").) The Appraisal states in relevant part as follows:

. . . It is understood that the function of this appraisal is to support the sewer benefit to the subject property for internal purposes.

In estimating the amount of the sewer benefit, the standard "Before and After" technique has been utilized; *i.e.,* the sewer benefit estimate is based on the difference between the market value of the property immediately before and after the installation of the sewer line serving the property. The difference between the before and after values is the benefit to the property resulting from the availability of the municipal sewer line.

.     .     .     .     .

As a result of my inspections, investigations and analysis, it is my opinion that the benefit to the subject property attributable to the sewers is as follows:

.     .     .     .     .

Phase III (38 Independent Living Units)     $10,347/Unit *

* The unit rate for Phase III is set in accord with the rate charged for the independent living units in the most recent phase of Walnut Tree Village.

(Appraisal at 1–2.)

On March 30, 2001, the Town caused a "Legal Notice" to be published in the Newtown Bee which notice provided in relevant part as follows:

---

10. The foregoing paragraph is referred to hereafter as "Paragraph A."

11. The foregoing paragraph is referred to hereafter as "Paragraph B."

At a meeting held on March 22, 2001, the Newtown Water Pollution Control Authority set connection fees as follows: Connection fees for ... "The Homesteads Community", ... $393,186.00 for 38 independent living units, payable at 5.35% over 17 years.

.       .       .       .       .

This action was taken after a duly noticed Public Hearing held on March 12, 2001 and said charges were filed with the Office of the Town Clerk on March 27, 2001. Any appeals from such charges must be taken within twenty-one days after such filing.

(Town's Exhibit B, the "Legal Notice.") No appeal to the referenced action was taken by any party. The Debtor never posted security with the Town (Transcript at 33) and apparently never made any payment toward the Fee.

On November 21, 2001, the Town filed in the Newtown land records a document entitled "Town of Newtown—Sewer Lien Certificate Continuing Sewer Lien for not More than 15 Years." (Town's Exhibit A.) That certificate (the "Lien Certificate") provided in relevant part as follows:

> The lien continued by this certificate is to secure payment of a sewer assessment, the principal of which is due to said Town of Newtown, together with legal interest, fees and charges thereon, in the name of the individual(s) listed below.

(Town's Exhibit A.) [12] The Lien Certificate listed the Debtor as the "Owner of Record" and stated the "Principal Amount Due" as $393,186.00. (*Id.*)

## IV.  *DISCUSSION*

### A.  *Applicable Law*

#### 1.  *Relevant Statutes*

The parties agree that the "sewer lien" referred to in the Lien Certificate to be valid must be a lien in respect of an "assessment of benefits" governed by Sections 7–249, 7–252, 7–253 and 7–254 of the Connecticut General Statutes.

Section 7–249 provides in relevant part as follows:

> At any time after a municipality, by its water pollution control authority, has acquired or constructed, a sewerage system or portion thereof, the water pollution control authority may levy benefit assessments upon the lands and buildings in the municipality which, in its judgment, are especially benefited [sic] thereby, whether they abut on such sewerage system or not, and upon the owners of such land and buildings, according to such rule as the water pollution control authority adopts, subject to the right of appeal as hereinafter provided.... No lien securing payment shall be filed until the property is assessed ....

Conn. Gen.Stat. Ann. § 7–249 (West 2006).

Section 7–252 provides in relevant part as follows:

> Assessments shall be due and payable at such time as is fixed by the water pollution control authority, provided no assessment shall become due until the work or particular portion thereof for which such assessment was levied has been completed, except that when the work or particular portion thereof for which such assessment was levied is being performed by the water pollution control authority pursuant to an order of the Department of Environmental Protection, the entire assessment may be made due and payable, provided the portion of the total work bonded by the

---

12.  Exhibit A is a certified copy of the Lien    Certificate.

water pollution control authority, which directly benefits the particular property has been completed. The water pollution control authority shall give notice of the date when assessments are due and payable by publication at least twice within a period of fifteen days in a newspaper having a general circulation in the municipality and shall mail a copy of such notice to the owners of the property assessed at their last known addresses. Such notice shall list the streets and describe the area within which are located any properties against which such assessments are due. No assessment shall be due and payable earlier than thirty days after the first publication of such notice.

Conn. Gen.Stat. § 7–252 (West 2006).

Section 7–253 provides in relevant part as follows:

The water pollution control authority may provide for the payment of any assessment in substantially equal annual installments, not exceeding thirty, and may provide for interest charges applicable to such deferred payments. . . . The water pollution control authority shall cause the town clerk of the town in which the property so assessed, in such equal installments, is located, to record on the land records a certificate, signed by the tax collector or treasurer of the municipality, of such facts in form substantially as follows:

CERTIFICATE OF NOTICE OF INSTALLMENT PAYMENT OF ASSESSMENT OF BENEFITS

.     .     .     .     .

Such certificate shall operate as notice of the existence of a plan for payment of such assessment by installments and the town clerk shall cancel or remove the same within seven calendar days after the last installment due has been satisfied, or the total assessment together with all interest, fees and charges has been paid in full.

Conn. Gen.Stat. Ann. § 7–253 (West 2006).

Section 7–254 provides in relevant part as follows:

(a) Any assessment of benefits or any installment thereof, not paid within thirty days after the due date, shall be delinquent and shall be subject to interest from such due date at the interest rate and in the manner provided by the general statutes for delinquent property taxes. Each addition of interest shall be collectible as a part of such assessment.

(b) Whenever any installment of an assessment becomes delinquent, the interest on such delinquent installment shall be as provided in subsection (a) or five dollars, whichever is greater. Any unpaid assessment and any interest due thereon shall constitute a lien upon the real estate against which the assessment was levied from the date of such levy. Each such lien may be continued, recorded and released in the manner provided by the general statutes for continuing, recording and releasing property tax liens . . . [13]

Conn. Gen.Stat. Ann. § 7–254 (West 2006).

### 2. *Burden of Allegation and Proof*

■■■ These proceedings are materially similar to an action by the Town to foreclose the Lien. In such actions, the burden of proof is as follows:

When the [assessment] lien has been continued by certificate, the production in court of the certificate of lien, or a certified copy thereof, shall be prima facie evidence that all requirements of

**13.** *See* Conn. Gen.Stat. §§ 12–173 *et seq.*

law for the assessment and collection of the ... assessment secured by it, and for the making and filing of the certificate, have been duly and properly complied with. *Any claimed informality, irregularity or invalidity in the assessment ... or in the lien filed, shall be [a] matter of affirmative defense to be alleged and proved by the defendant.* Conn. Practice Book 1998 § 10–70(b) (emphasis added). When as here, the Bankruptcy Code does not establish the burden of allegation and proof, the applicable state law burden will be applied in bankruptcy. *Raleigh v. Ill. Dept. of Revenue,* 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000). *See also In re Campano,* 293 B.R. 281, 285 (D.N.H.2003) A certified copy of the Lien Certificate is in the record as Town's Exhibit A. Therefore, in accordance with the above-cited state law, the burden of allegation, the burden of production and the risk of nonpersuasion are all on the Debtor.

## B. *Application of Law to Facts*

### 1. *Sewer Connection Fee or Assessment of Benefits*

■ The Debtor argues that the Lien is not a valid statutory sewer lien because the Fee was a "connection fee" pursuant to Section 7–255 and not a statutory "assessment of benefits" under Section 7–249. The Debtor has failed to persuade the court on that point.

To carry its point, the Debtor chiefly relies upon ambiguities in the Town's

proof: specifically, the use of the term "connection fee" in the Agreement and in the Legal Notice; and the fact that, at page 4 of the Agreement, it refers to a "Certificate of Notice of Installment Payment of Connection Fee" and Section 7–258 of the Connecticut General Statutes.[14] However, for the reasons which follow the court is not persuaded that the Fee was anything but a Section 7–249 "assessment of benefits" to the Property.

■ First, the Appraisal was annexed to the Agreement and the Appraisal was an "opinion ... [of] the benefit to the ... [P]roperty attributable to the sewers ...." (Appraisal at 2.) The calculation of the Fee was in accordance with the Appraisal. (*See* Paragraph A.) Second, at page 4 of the Agreement, it refers to a " 'Certificate of Notice of Installment Payment of Connection Fee' ... enforceable in accordance with the provisions of Section 7–258 ...." The only statutory reference to a "Notice of Installment Payment" is Section 7–253's provision for a "Certificate of Notice of Installment Payment of Assessment of Benefits."[15] The foregoing render the term "connection fee" at worst ambiguous in the context of the Agreement. At the Hearing, Mr. Hurley testified that, for those landowners (such as the Debtor) who came into the system after the original abatement project, the term "connection fee" was used by the Town in place of and as the equivalent of the term "assessment of benefits."[16] The court credits Mr. Hur-

---

**14.** Section 7–258 is entitled: "Delinquent charges for connection [to sewers] or use [of sewers]. Lien." Conn. Gen.Stat. Ann. § 7–258 (West 2006).

**15.** Moreover, Section 7–255 which provides for "charges for connection with and for the use of a sewerage system" provides for "optional methods of payment of sewer use charges" only for two limited classes of persons. *See* Conn. Gen.Stat. § 7–255(c). Oth-

erwise, such fee is paid quarterly. (Transcript at 25.)

**16.**

In the Town itself we used the word sewer benefit for the original pollution abatement project that was done in conjunction with the State of Connecticut. That was approximately 800 properties were [sic] hooked up. They were mandatory hook-ups. Sew-

ley's testimony that "for . . . [the Town], the process has always been a sewer benefit to the individual coming into the systems [after the initial abatement project]." (Transcript at 90.) In contrast, the Debtor produced no proof with respect to its understanding of the Agreement (or the Legal Notice) on the relevant point.[17] For all the reasons stated above, the court is not persuaded that the Fee was anything but a Section 7-249 "assessment of benefits" to the Property.

### 2. *Procedural Requisites*

The Debtor alleges that the Lien is invalid because certain procedural (statutory) requisites for a valid sewer lien have not been satisfied.[18] That position has no meaningful support in the record and cannot prevail. *Cf. Town of Wallingford v. Glen Valley Associates, Inc.*, 190 Conn. 158, 163, 459 A.2d 525 (1983) ("The record includes a certified copy of the sewer lien;

er benefit assessment was [sic] placed on the properties, everything was liened.
Subsequent to that project . . . we have used the term connection and connection fee for everybody who came later, although we followed precisely the same process of notice and hearing . . . . So, for us, the process has always been a sewer benefit to the individual coming into the system. But chronologically we started using the term connection and connection fee after the initial pollution abatement project.
(Transcript at 89–90.)

**17.** The court is aware that the general rule is that ambiguities in a contract are to be construed against the drafter. *See Texaco, Inc. v. Rogow*, 150 Conn. 401, 408, 190 A.2d 48 (1963) (general rule of construction against the drafter). However, the Town does not seek to enforce the Agreement in this case. Rather, the Town has introduced the Agreement into the record strictly as evidence to rebut the Debtor's claim that the Fee is not a benefit assessment. (*See* Transcript at 57, lns. 10–16.) Moreover, even if the "general rule" would otherwise apply here, that rule is subject to the rule that "if the terms of an

however, . . . [the record] is devoid of any evidence showing that Glen Valley failed to receive notice of the proposed sewer assessment. Since Glen Valley did not sustain its burden of proof, the sewer lien is presumed to be valid.").

### 3. *"Claim"*

■ The Debtor argues that Paragraph B of the Agreement (which makes the Fee payable only on a per-Unit basis upon the issuance of each CO) controls here. Accordingly, the Debtor argues, since no CO's have been issued and the Debtor now does not even own the Property the Fee does not constitute a "claim" in bankruptcy.[19] The court disagrees with the Debtor's initial premise that Paragraph B applies here.

The court construes the relevant portions of the Agreement as follows. Paragraph A conditionally provided the Debtor with the right to pay the Fee in install-

instrument are fairly susceptible of two or more interpretations, the one which is the more equitable, reasonable and rational is to be preferred." *See Texaco, Inc. v. Rogow, supra.* Although the Agreement is not a model of good contract draftsmanship, for the reasons set forth in part IV.B.1, above, the court concludes that the Town's suggested interpretation of the ambiguous contractual term "connection fee" is "more equitable, reasonable and rational" than the Debtor's and should be preferred.

**18.** Only procedural deficiencies specifically alleged by the Debtor have been considered. *Cf.* part IV.A.2, *supra* ("Burden of Allegation and Proof").

**19.** Bankruptcy Code § 101(5) provides in relevant part:

The term "claim" means—
(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured . . . .
11 U.S.C.A. § 101(5) (West 2006).

ments. Paragraph B made the Fee payable on a per Unit basis as CO's were issued for the Units in the event that the right to pay in installments was terminated by the Town. Paragraph A would become effective only when the Debtor had "provide[d] the Town ... with security ... which, in the sole and absolute opinion of the Town Finance Director and the Town Attorney ... [was] sufficient in amount and/or value and ... [was] satisfactory in form and substance." [20] Paragraph B permitted the Town to terminate an existing right of the Debtor to pay in installments if the "Town Finance Director and the Town Attorney, in their sole and absolute judgment ... deem that the Town is not provided with adequate security." Paragraph B presupposes that Paragraph A was triggered by the Debtor's posting of "sufficient" security. If Paragraph A were not triggered, Paragraph B would never become effective. If Paragraph A were never triggered and Paragraph B thus never became relevant, the Fee was owing and (assuming compliance with Section 7–252) due prepetition as a lump sum.

The evidence in the record is uncontroverted that the Debtor had not posted the requisite security as of the filing of the Lien Certificate on November 21, 2001. (*See* Transcript at 33–34.) Moreover, the Debtor has not alleged that the Town filed a Section 7–253 "Certificate of Notice of Installment Payment of Assessment of Benefits" and it is a fair inference from the record that no such certificate was filed.

The fact that the March 30, 2001 Legal Notice refers to an installment payment arrangement (which still was a possibility at that time) does not persuade the court that the Debtor's right to pay the Fee in installments ever matured.[21] Accordingly, the court finds that the Fee was owing as a lump sum prepetition.

■ The record is silent as to whether the Town complied with the Section 7–252 procedure for declaring the Fee "due." However, even if it the Town has not complied with the Section 7–252 procedure, the Fee was still owing prepetition if not yet due. That is because, by statute, a sewer benefit assessment is deemed owing from the date of levy. *See* Conn. Gen.Stat. Ann. § 7–254 ("Any unpaid assessment ... shall constitute a lien upon the real estate against which the assessment was levied *from the date of such levy*.") (emphasis added).[22] That is the classic definition of a Bankruptcy Code § 101(5) "claim" that is "unmatured." *Cf. First Connecticut Small Business Investment Co. v. Bank of Boston Connecticut (In re First Connecticut Small Business Investment Co.)*, 118 B.R. 179, 184 (Bankr. D.Conn.1990) (Shiff, J.) ("[E]ven assuming the debt was not mature prior to the petition, the filing of a petition accelerates the principal amounts due on all claims against the debtor."). Thus, the Fee still would constitute a "claim" even if not "due" and/or "payable" prepetition.[23]

---

**20.** A reasonable construction of Paragraph A is that the outside date for posting such security was no later than July, 2001.

**21.** Even if the burden of proof were on the Town on this issue, the result would be the same. The court views the Calculation's use of the installment payment formula to calculate accrued interest either as inartful or as an example of "pleading in the alternative."

**22.** The term "unpaid assessment" is to be contrasted with the term "delinquent" assessment which appears elsewhere in Section 7–254, and with the term "due and payable" which appears in Section 7–252.

**23.** The Debtor's appeal to the equities also fails. It is a fair inference that the Sale Proceeds reflect the "sewer benefit" to the Property at least to some extent. (*Cf.* Appraisal.) Accordingly, the estate got the benefit of the increase in value to the Property

## V. CONCLUSION

For the reasons discussed above, the court concludes that the Objection is not well founded at least to the extent of the principal amount of the Fee and is overruled to that extent. The Trustee is authorized to pay $393,186.00 to the Town from the Sale Proceeds and the Motion is granted to that extent. The Hearing will be continued to consider the propriety of payment of interest on the Fee. A scheduling notice will issue.[24]

It is **SO ORDERED.**

from the sewers when the Property was sold, and it is not inequitable to allow the Town to recoup the same through the Lien. However, although (as explained above) the issue of whether payment of the Fee was "delinquent" prepetition is irrelevant to the determination of whether the Fee is a "claim," that issue may be relevant to the calculation of interest on the principal amount of the Fee. *Cf.* Conn. Gen.Stat. § 7–252.

24. The Debtor's remaining arguments have been considered by the court and found not to be supported by the evidence or to be otherwise unpersuasive. Because of the conclusion reached herein by the court, it is unnecessary for the court to consider further the issue of the Debtor's standing at this time.